KING, C.J.,
 

 for the Court.
 

 ¶ 1. Anthony Trevillion was convicted in the Circuit Court of Warren County of murder, two counts of aggravated assault, shooting into an occupied dwelling, and possession of a firearm by a convicted felon and sentenced to twenty years on each aggravated assault count, ten years for shooting into an occupied dwelling, and three years for possession of a firearm by a convicted felon, all in the custody of the Mississippi Department of Corrections (MDOC). These sentences are to run consecutively to a life sentence for murder. Trevillion appeals asserting that the trial court erred by dismissing two potential jurors because they had previously served on a jury in the last two years. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. On June 17, 2007, Justin Maurice Harris; his brother, Jarvis Bowman; and his friend, Garrod Bunch, were at the Biscuit Company, a local nightclub in Vicksburg, Mississippi, when Trevillion confronted Harris. At this point, security directed the group to leave. After leaving the club, Harris, Bowman, and Bunch went to the Smoke Break, a local convenience store. The men were standing outside when Trevillion and his brother, Armond Trevillion (Armond), drove up and stopped. Trevillion and Harris exchanged words and stared at each other. Harris and his group walked away, and Trevillion went into the store. Harris, Bunch, and Bowman then went to Harris and Bowman’s home, which Harris and Bowman shared. Shortly after arriving home, Matthew Nash, Trevillion’s friend, came to Harris’s home to talk with him. Nash apologized and explained that he did not have any hard feelings toward Harris. While Nash was talking to Harris, Trevillion, Armond,
 
 *1100
 
 and an unidentified third person approached the house and began firing their weapons toward Harris and into the house. Bunch and Bowman, who were standing inside the front door of the house, managed to exit the front room of the house and hide behind furniture in other rooms of the house to avoid the gunfire. Harris, who was unable to escape the gunfire, sustained three fatal gunshot wounds.
 

 ¶3. In January 2008, Trevillion, Ar-mond, Nash, Rufus Armstrong, and Alonzo Trevillion were indicted by a Warren County grand jury for murder, aggravated assault, shooting into an occupied dwelling, and possession of a firearm by a convicted felon. On April 16, 2008, Trevillion was convicted and sentenced on Count I, murder, to life; on Count II, shooting into an occupied dwelling, he was sentenced to ten years; on Count III, aggravated assault, he was sentenced to twenty years; on Count IV, aggravated assault, he was sentenced to twenty years; and on Count V, possession of a firearm by a convicted felon, he was sentenced to three years, with all the sentences to be served in the custody of the MDOC and to run consecutively to the sentence in Count I.
 

 ¶ 4. Trevillion filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied Trevillion’s motion. Aggrieved, Trevillion appeals and argues that the trial court erred in excusing two jurors because the potential jurors had previously served on a jury within the last two years. Finding no error, we affirm the judgment of the trial court.
 

 ANALYSIS
 

 ¶ 5. Trevillion claims that the trial court erred by excusing two potential jurors because they had previously served on a jury within the past two years.
 

 ¶6. During voir dire, the trial judge began by explaining to the venirepersons the qualifications required to serve on a jury and the statutory excuses available. As a part of that process, the trial judge stated:
 

 I mentioned if you’ve served within the last two years as a juror, you must be excused. If you have an illness or some member of your immediate family has an illness that would make it impractical or impossible for you to serve, you’re ■entitled to be excused. If you would serve — if you would suffer — excuse me — serious financial loss for service on this jury here the next three days, you’re entitled to be excused, or if you have some sort of other emergency that I have not touched upon, you can be excused.
 

 ¶ 7. After outlining the qualifications and available statutory excuses, the trial judge then requested that those individuals who wanted to make the trial court aware of either a disqualification or a statutory excuse to take a seat on the first few rows on the other side of the courtroom, and each would be given the opportunity to address the court.
 

 ¶ 8. There were two potential jurors, James Jefferson and a Ms. Thomas,
 
 [1]
 
 that Trevillion claims should not have been excused because of their prior jury service. The following exchange occurred between the trial court and those potential jurors during the qualifying process:
 

 FIRST POTENTIAL JUROR (JAMES JEFFERSON)
 

 MR. JEFFERSON: How are you doing?
 

 THE COURT: Hey. How are you doing?
 

 
 *1101
 
 MR. JEFFERSON: All right.
 

 THE COURT: Okay. What’s your reason, Mr. Jefferson?
 

 MR. JEFFERSON: I sat on a jury on the Ronald Vaughn case the other year. THE COURT: Okay.
 

 [[Image here]]
 

 THE COURT: That’s been within two years?
 

 MR. JEFFERSON: I believe so. Ronald Vaughn, was that more than two years ago?
 

 ASSISTANT PROSECUTOR: I think it has been within the last two years, hasn’t it?
 

 THE COURT: Huh?
 

 MR. JEFFERSON: I believe it has been.
 

 ASSISTANT PROSECUTOR: I believe it has because the opinion was just handed down a couple of weeks ago.
 

 THE COURT: So it’s been more than two years, huh?
 

 ASSISTANT PROSECUTOR: I don’t think it has. I think it was tried late 2006, early 2006. Like I said, the opinion came down about a month ago from the Court of Appeals.
 

 PROSECUTOR: Your Honor, the jury list does have a last jury date on it of November 28th, 2005, but I’m not sure how accurate that is.
 

 MR. JEFFERSON: That’s fine. I don’t mind serving.
 

 THE COURT: Okay. Okay. I’m going to go ahead and excuse you then.
 

 MR. JEFFERSON: Thank you.
 

 SECOND POTENTIAL JUROR (MS. THOMAS)
 

 THE COURT: Ms. Thomas.
 

 MS. THOMAS: Yes, I served as a juror two years ago.
 

 THE COURT: You remember what ease it was?
 

 MS. THOMAS: Dr. [Halinski’s] and Ms. Brown’s case.
 

 THE COURT: Which one was that now?
 

 MS. THOMAS: Dr. [Halinski]
 

 THE COURT: [Halinski], Brown
 

 MS. THOMAS: Uh-huh. (Affirmative Response)
 

 THE COURT: Okay. That has been within the last two years, I think. Okay. You’re free to go.
 

 MS. THOMAS: Thank you.
 

 ¶ 9. According to Mississippi Code Annotated section 13-5-25 (Supp.2009), a qualified individual may be exempted from jury service as a personal privilege. The statute provides:
 

 Every citizen over sixty-five (65) years of age, and everyone who has served as a grand juror or as a petit juror in the trial of a litigated case within two (2) years, shall be exempt from service if the juror claims the privilege. No qualified juror shall be excluded because of any such reasons, but the same shall be a personal privilege to be claimed by any person selected for jury duty. Any citizen over sixty-five (65) years of age may claim this personal privilege outside of open court by providing the clerk of court with information that allows the clerk to determine the validity of the claim.
 

 Provided, however, that no person who has served as a grand juror or as a petit juror in a trial of a litigated case in one (1) court may claim the exemption in any other court where the juror may be called to serve.
 

 ¶ 10. The exemptions under Mississippi Code Annotated section 13-5-25 “are not mandatory and must be asserted by the individual.”
 
 Spires v. State,
 
 10 So.3d 477, 482(¶ 22) (Miss.2009). Jurors
 
 *1102
 
 who have served on a jury during the past two years may still be called upon to serve if there is a deficiency of jurors. Miss. Code Ann. § 13-5-25. Mississippi Code Annotated section 13-5-23 (Supp.2009) permits discretionary dismissal of jurors under certain conditions. Dismissals pursuant to these two statutes are discretionary and not automatic.
 

 ¶ 11. The trial judge incorrectly informed prospective jurors that he was required to excuse them if they had served on a jury in the last two years. Jefferson and Thomas each informed the trial judge of their prior jury service. Both Thomas and Jefferson accepted the judge’s representation that their release from jury service was mandatory. As a result, neither of them affirmatively claimed the prior jury service excuse. Thomas thanked the judge when he excused him; thus, it may be argued that she claimed the excuse by her departure. However, Jefferson not only did not claim the excuse, but he affirmatively expressed a willingness to serve. It thus appears that the trial court committed error in excusing Jefferson, but not Thomas.
 

 ¶ 12. Although the trial court erred in excusing Jefferson, the record does not reflect a contemporaneous objection to this error, and the exclusion of Jefferson was harmless error; therefore, Trevillion is not entitled to any relief. If a defendant fails to raise a contemporaneous objection to the composition of the jury before it is impaneled, he waives the right to raise this issue for the first time on appeal.
 
 Myers v. State,
 
 565 So.2d 554, 557 (Miss.1990). Having failed to raise a contemporaneous objection, Trevillion is procedurally barred from raising this issue on appeal.
 

 ¶ 13. Additionally, as previously mentioned, the exclusion of Jefferson must be considered harmless error. A defendant has a right to have his case heard by a fair and impartial jury.
 
 Coverson v. State,
 
 617 So.2d 642, 646 (Miss.1993). A defendant does not have the right to have any specific individual serve as a member of the jury.
 
 Id.
 
 However, in the selection of a jury, a defendant does have the right to be sure that potential jurors are not excluded from service for improper reasons, such as race or gender.
 
 See Simmons v. State,
 
 746 So.2d 302, 308 (¶ 23) (Miss.1999). There is nothing in the record to even suggest that the jury, which heard his case was not fair and impartial. Accordingly, this issue lacks merit.
 

 ¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; COUNT II, SHOOTING INTO AN OCCUPIED DWELLING, AND SENTENCE OF TEN YEARS; COUNT III, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; COUNT IV, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; AND COUNT V, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF THREE YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO THE SENTENCES IN COUNTS II, III, IV, AND V TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The record does not contain the first name of Ms. Thomas.